IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| WAYNE AVILES, | Cause No. CV 23-42-GF-BMM |
| Petitioner, | |
| vs. | ORDER |
| WARDEN PETE BLUDWORTH,[1] ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

State pro se petitioner Wayne Aviles ("Aviles") filed an application under 28 U.S.C. § 2254, seeking habeas corpus relief.  (Doc. 1.)  The petition was deemed filed on June 20, 2023.  (Doc. 1-4 at 1.)  Aviles was subsequently ordered to show cause as to why his petition should not be dismissed as time-barred and procedurally defaulted and was advised of the relevant legal standards.  (*See* Doc. 8.)  Aviles's double jeopardy claim was also dismissed.  (*Id*. at 6-8.)  Aviles timely responded to the Court's order.  (Doc. 9.)  For the reasons discussed herein, Aviles's petition will be dismissed.

---

[1] While this matter has been pending, Aviles was transferred to Crossroads Correctional Center ("CCC").  *See* (Doc. 10.)  Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, a state prisoner seeking federal habeas relief must name as respondent the person having custody of him.  *See Magwood v. Patterson*, 561 U.S. 320, 333 (2010).  Accordingly, the docket will be updated to reflect CCC Warden Pete Bludworth as his current custodian.

## I.      Background/Aviles's Claims

The Court previously outlined Aviles's state court proceedings in detail. (*See* Doc. 8 at 2-6.)  They are summarized briefly herein.  Following a plea of guilty in Montana's Tenth Judicial District Court, Fergus County, Aviles was convicted of one count of Sexual Intercourse without Consent.  (Doc. 1 at 1.)  On October 10, 2017, Aviles was sentenced to Montana Department of Corrections ("DOC") for 10-years with none of the time suspended.  *See* Judg. (Doc. 1 at 56-67.)  The State of Montana then notified the Montana state district court that a 10-year commitment to the DOC was unlawful under MCA § 46-18-201(3)(a)(iv)(A). This statute provides that while an offender may be sentenced to the DOC, all but the first 5 years of the commitment must be suspended.  On January 4, 2018, The Montana state district court resentenced Aviles to a 10-year commitment to the DOC with 5-years suspended.  *See* Amd. Judg. (Doc. 1 at 68-79.)  Aviles did not file a direct appeal from either the original or amended judgment.  (*Id*. at 3.)

On August 12, 2019, Aviles filed a petition for writ of habeas corpus and supporting brief in the Montana state district court.  (*See* Doc. 1-1 at 17-37.)  There he alleged various defects in his underlying state court proceedings.  On November 21, 2022, the Montana state district court dismissed the matter.  (*Id*. at 45-46.)

The State of Montana filed a petition to revoke Aviles's sentence while the collateral review proceedings were pending in the Montana state district court.  On

May 24, 2022, the Montana state district court revoked Aviles's suspended sentence based upon his admissions to violations. The Montana state district court imposed a 5-year unsuspended term and awarded Aviles credit for time served and street time. Aviles did not appeal his revocation sentence. *See Aviles v. Kowalski*, No. OP 23-0116, Ord. at *1 (Mont. March 7, 2023).

Aviles then filed a petition for writ of habeas corpus with the Montana Supreme Court in which he contended that the sentence imposed upon revocation violated his right to be free of double jeopardy, along with fifteen additional claimed violations and constitutional infirmities, including conflict of interest and ineffective assistance of counsel. *Id.* The Montana Supreme Court determined the revocation sentence was lawful and that Aviles's right to be free of double jeopardy was not violated by revoking the suspended sentence. *Id.* at *2. The Montana Supreme Court then determined Aviles's remaining claims could not be addressed in habeas corpus, pursuant to MCA § 46-22-101(1). The claims should have been raised, if at all, on direct appeal, but Aviles was now time-barred from challenging his conviction and sentence on appeal. *Id.*, citing MCA § 46-22-101(2). Aviles was also advised that Montana law barred him from challenging a sentence imposed upon revocation via the remedy of habeas corpus. *Id.* Aviles's petition was denied and dismissed.

Aviles filed a subsequent petition for writ of habeas corpus with the

Montana Supreme Court alleging his sentence violated his right to be free from double jeopardy, along with six other claims. *See Aviles v. Kowalski*, No. OP 23-0348, Ord. (Mont. July 11, 2023). The Montana Supreme Court again explained that Aviles could not raise his claims through a remedy of habeas corpus. *Id*. at *2. Aviles failed to file a direct appeal of his original sentence in 2017 or his revocation sentence in 2022. This failure barred Aviles from challenging the conviction via habeas. *Id*. Because his claims were procedurally barred under the writ and improperly raised under state law, the petition was denied and dismissed. *Id*., *citing* MCA § 46-22-101(2).

Aviles has three claims remaining in his federal petition. He asserts: (i) Montana state district Judge Jon A. Oldenburg was biased and operated under a conflict of interest because he was a guardian ad litem for Aviles as a youth and should have recused himself, (Doc. 1 at 9); (ii) Fred Snodgrass and Ashley Ann Harada provided ineffective assistance of counsel during the underlying criminal proceedings and sentencing when they failed to challenge the information and/or waiver of indictment, failed to provide a list of witnesses to assist in Aviles's defense, failed to move to strike witnesses at the conclusion of testimony, failed to object to sentencing enhancements, failed to mount objections at the time of trial, and failed to object to the presentence investigation report, (*id*. at 15); and (iii) False DNA testing was used as evidence against Aviles, and he is actually

4

innocent. (*Id*. at 19).

## II.    Analysis

As a preliminary matter, this Court notes that Aviles makes no challenge to nature of his guilty plea.  For example, he does not argue the plea was entered under duress or upon faulty advice of counsel.  *See e.g.*, sent. trans. (Doc. 1 at 49-50) (Aviles admitted guilt and accepted full responsibility for committing Sexual Intercourse without Consent). The Court presumes Aviles entered the plea knowingly, voluntarily, and intelligently.

A valid guilty plea forecloses a defendant from raising non-jurisdictional defects.  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *see also United States v. Caperell*, 938 F. 2d 975, 977(9th Cir. 1991) (a guilty plea generally waives all claims of a constitutional nature occurring before the plea.) "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilty and a lawful sentence."  *United States v. Broce*, 488 U.S. 563, 569 (1989). Accordingly, a defendant convicted after a plea is limited to challenging "whether the underling plea was both counseled and voluntary" or whether "on the face of

the record the court had no power to enter the conviction or impose the sentence. *Broce*, 488 U.S. at 569.  The non-jurisdictional claims Aviles presents are not proper in the present proceeding.  As explained below, however, Aviles's claims are also untimely and procedurally defaulted, precluding this Court's review.

### i.    Procedural Default

Aviles does not dispute the Court's finding that his claims are procedurally defaulted.  He contends instead that adequate bases exist to excuse the default. (Doc. 9 at 3-4.)  Aviles argues the state statue applied to his cases was not an independent and adequate bar, that cause and prejudice exists to set aside the default, and that he is actually innocent.  (*Id.*)

Aviles first argues that MCA § 46-22-101(2) was not applied consistently in his state court proceedings and this purported inconsistent application of the statute should allow this Court to review his claims.  (*Id.* at 3.)  The statute provides as follows:

> The writ of habeas corpus is not available to attack the validity of the conviction or sentence of a person who has been adjudged guilty of an offense in a court of record and has exhausted the remedy of appeal. The relief under this chapter is not available to attack the legality of an order revoking a suspended or deferred sentence.

MCA § 46-22-101(2)(2023).

Aviles suggests that this statute was not applied to review and correct his 10-year prison sentence, but it was applied to prevent review of the claims he

presented in his habeas petitions to the Montana Supreme Court. (Doc. 9 at 3.) Aviles's original sentence was not adjusted, however, based upon the filing of a habeas petition. The State of Montana, on its own motion, notified the Montana state district court that a 10-year commitment to the DOC was unlawful under MCA § 46-18-201(3)(a)(iv)(A). (*See* Doc. 1-2 at 68-9.) Aviles was resentenced to a 10-year commitment to the DOC with 5-years suspended. (*Id.* at 69.)

Aviles's subsequent habeas petitions, filed after the revocation of the amended sentence, were denied, in part, pursuant to MCA § 46-22-101(2). *See Aviles v. Kowalski*, No. OP 23-0116, Ord. at *2; *see also Aviles v. Kowalski*, No. OP 23-0348, Ord. at *2. Accordingly, MCA § 46-22-101(2) appears to be an adequate bar that precluded the Montana Supreme Court's review of his claim as illustrated by the two separate applications of the statute in Aviles's cases. Despite Aviles's assertions, this state procedural rule appears to be both firmly established and regularly followed in state habeas proceedings. *See e.g., Lee v. Kemna*, 534 U.S. 362, 375 (2002). Aviles has demonstrated nothing to the contrary. The claim is defaulted and there is no basis for the Court to consider it.

The Court may review a procedurally defaulted claim if the petitioner can demonstrate either of the following: (1) cause for the default and actual prejudice to excuse the default, or (2) a miscarriage of justice/actual innocence. 28 U.S.C. § 2254(c)(2)(B); *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman v. Thompson*,

501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

"Cause" is something that "cannot be fairly attributable" to a petitioner, and a

petitioner must show that this "objective factor external to the defense impeded

[his] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753

(internal citation omitted).  To establish prejudice a "habeas petitioner must show

'not merely that the errors at … trial created a *possibility* of prejudice, but that they

worked to his *actual* and substantial disadvantage infecting his entire trial with

error of constitutional dimensions'" *Murray*, 477 U.S. at 494 (*quoting United

States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Aviles believes

cause exists to allow the Court to consider his conflict-of-interest claim.

Aviles provides conflicting information, however, regarding when he

discovered the bias/conflict of interest claim.  Aviles states that he did not learn of

this claim until 2019, when his mother told him that Judge Oldenburg had acted as

guardian ad litem in a juvenile matter.  (Doc. 9 at 4.)  Conversely, Aviles states

that his lawyer would not let him raise this claim in the underlying criminal

proceedings.  (*Id*. at 3.)  Aviles also states that upon resentencing, his new lawyer

similarly refused to raise the claim.  Aviles apparently expressed a desire to present

the claim in both instances.  (*Id*.)

Aviles was originally sentenced on October 10, 2017.  He was resentenced

on January 4, 2018.  Thus, according to Aviles's filing, he was aware of the

8

potential conflict of interest claim well before 2019.  Aviles cannot establish cause to excuse the default of this claim.  Aviles has not shown that something fairly attributable to someone else impeded his efforts to timely file this claim.  *See Coleman*, 501 U.S. at 753.  Moreover, Aviles has not shown an actual error of constitutional dimension occurred in his case.  Judge Oldenburg accepted Aviles's guilty plea and imposed sentence.  When he was advised of an error in the sentence, a new sentencing hearing was held, and Judge Oldenburg imposed an amended sentence that was more lenient to Aviles.  The fact that Aviles's sentence was subsequently revoked after he admitted to violations of the conditions of the probationary portion of his sentence, does not demonstrate actual prejudice or bias on the part of Judge Oldenburg.  Aviles cannot meet either prong required to excuse the default.  *Coleman*, 501 U.S. at 753, *see also Murray*, 477 U.S. at 494.

Aviles also argues that this Court should excuse the procedural default of his remaining claims because he was not seen by a grand jury, and he was not charged via an indictment.  Instead, he was charged by an information.  (Doc. 9 at 3-4.)  As a preliminary matter, the Fifth Amendment Grand Jury Clause, which guarantees indictment by grand jury in federal prosecutions, was not incorporated by the Fourteenth Amendment to apply to the states.  *See Branzburg v. Hayes, 408 U.S. 665, 687-88 n. 25 (1972)* (noting that "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth

Amendment"); *Hurtado v. California, 110 U.S. 516, 535* (holding that the Fourteenth Amendment did not incorporate the Fifth Amendment right to a grand jury); *see also Rose v. Mitchell*, 443 U.S. 545, 557 n. 7 (1979); *Gerstein v. Pugh*, 420 U.S. 103, 118-119 (1975); *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Beck v. Washington*, 369 U.S. 541, 545 (1962); *Gaines v. Washington*, 227 U.S. 81, 86 (1928). To the extent that Aviles believes he was constitutionally entitled to indictment by a grand jury, and that his rights were violated when he was prosecuted via information, he is mistaken. The Court consistently has rejected such a claim as frivolous and wholly lacking in substantive merit. *See e.g., Christopher v. Salmonsen et al*., Cause No. CV 23-86-M-DLC, Ord. * 4, n. 1 (D. Mont. Nov. 2, 2023) (collecting cases). Moreover, this argument does not excuse the procedural default.

In conjunction with his Fifth Amendment argument, Aviles believes a grand jury would not have charged him, especially had they been presented the new information Aviles acquired regarding "touch DNA." (Doc. 9 at 3-4.) This argument also lacks merit.

The miscarriage of justice exception to procedural default "is limited to those *extraordinary* cases where the petitioner asserts his [actual] innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 541 F. 3d 933, 937 (9th Cir. 2008) (emphasis in original). To

10

pass through the actual innocence/*Schlup* gateway a petitioner must establish his or her factual innocence of the crime and not mere legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324; *see also Lee v. Lampert*, 653 F. 3d 929, 945 (9th Cir. 2011); *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013). A petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *McQuiggin*, 569 U.S. at 399 (*quoting Schlup*, 513 U.S at 327).

Scholarly information may exist about the science behind the transfer of DNA due to incidental contact. *See* (Doc. 1 at 19.) Aviles has presented no information to the Court that would establish that he is actually innocent of the offense of Sexual Intercourse without Consent based upon this same "evidence." Aviles opines that an expert who regularly conducts DNA testing could be procured to further explain the science on behalf of either Aviles or the State of Montana. Such conjecture does not constitute new reliable evidence that would exculpate Aviles. This is not the extraordinary case where Aviles has presented compelling evidence of his actual innocence. *See Schlup*, 513 U.S. at 321; *Johnson*, 541 F. 3d at 937. Because he cannot meet *Schlup's* high standard, no

basis exists to excuse the default of this claim.

###        ii.        Statute of Limitations

The AEDPA mandates that a one-year statue of limitations applies to applications for a writ of habeas corpus by a person in state custody.  28 U.S.C. § 2244(d)(1).  Section 2244(d)(1) provides that the limitations period shall run from the latest of the following:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D); *Shannon v. Newland*, 410 F. 3d 1083 (9th Cir. 2005).

Aviles believes the statute of limitations should not have begun to run until 2019 when he discovered the information surrounding the Judge Oldenburg/conflict claim.  (Doc. 9 at 4.)  As set forth above, due to Aviles's conflicting representations regarding when he became aware of this claim, the Court does not find Aviles's contention that he did not discover this claim until

2019 to be credible.

Aviles also seems to argue that writ of certiorari rule "trumps" the § 2254 habeas statute of limitations. (*Id*.)  Aviles believes an individual has 1-year after filing a petition for writ of certiorari, before the limitations period expires and that a petition for a writ of certiorari is not to be filed until after all state relief has been exhausted.  (*Id*.)  Aviles misapprehends the limitations statute.

Under 28 U.S.C. § 2244(d)(1)(A), "[t]he limitation period shall run from... the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review. . ."  This statute further provides that direct review generally concludes, and the judgment becomes final either upon the expiration of the time for filing a petition for writ of certiorari with the United States Supreme Court, or when the Court rules on a timely filed petition for certiorari.  *Bowen v. Roe*, 188 F. 3d 1157, 1158-59 (9th Cir. 1999).  As the Court previously explained, Aviles did not file a direct appeal within the 60 days of entry of the amended judgement, as required by Rule 4(5)(b)(i) of the Montana Rules of Appellate Procedure.  Accordingly, Aviles's conviction became final when the expiration of time for seeking direct review concluded.  *See* 28 U.S.C. § 2244(d)(1)(A).  Aviles filed no direct appeal, so he filed no petition for writ of certiorari and the additional time allowed for such a filing was inapplicable to his situation. The statute of limitations commenced on March 6, 2018, and expired one

13

year later, as this Court previously determined.  (*See* Doc. 8 at 10-11.)  Thus,

absent tolling, Aviles's petition is untimely.

Aviles does not argue that he is entitled to statutory tolling but seems to

suggest equitable tolling should apply.  (Doc. 9 at 4.)  The United States Supreme

Court has held "that § 2244(d) is subject to equitable tolling in appropriate cases."

*Holland v. Florida*, 560 U.S. 631, 645 (2010).  The Ninth Circuit "will permit

equitable tolling of AEDPA's limitations period only if extraordinary

circumstances beyond a prisoner's control make it impossible to file a petition on

time."  *Miles v. Prunty*, 187 F. 3d 1104, 1107 (9th Cir. 1999).  Petitioner "bears the

burden of establishing two elements: (1) that he has been pursuing his rights

diligently and (2) that some extraordinary circumstance stood in his way."  *Pace v.*

*DiGuglielmo*, 544 U.S. 408, 418 (2005).

Aviles asserts he is actually innocent of Sexual Intercourse without Consent

based upon DNA touch evidence.  (Doc. 9 at 4.)  "[A] credible showing of actual

innocence may allow a prisoner to pursue his constitutional claims [ …] on the

merits notwithstanding the existence of a procedural bar to relief."  *McQuiggin v.*

*Perkins,* 569 U.S. 383, 392 (2013).  "This rule, or fundamental miscarriage of

justice exception, is grounded in the 'equitable discretion' of habeas courts to see

that federal constitutional errors do not result in the incarceration of innocent

persons."  *Id*. (quotations omitted).  The United States Supreme Court explicitly has

14

stated that the miscarriage of justice exception "applies to a severely confined category" cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner.'" *McQuiggin*, 569 U.S. at 395(quotations and citations omitted).

As set forth above, Aviles has not made a credible showing of actual innocence.  He fails to connect the purported "touch DNA" evidence to his actual innocence.  Aviles's argument is based upon his own interpretation and conjecture of how such transfer might have occurred in his case.  Aviles's own assertions do not constitute conclusive evidence of innocence, and Aviles fails to show that no reasonable juror could have convicted him in light of this new evidence.  *See McQuiggin*, 569 U.S. at 399.  Because Aviles has failed to meet this burden, he is not entitled to an equitable exception to the statute of limitations.  Additionally, relative to the DNA information or the conflict-of-interest claim, Aviles has not met the "very high threshold" of establishing that extraordinary circumstances beyond his control made it impossible for him to timely file a habeas petition and that the same extraordinary circumstances were the cause of his untimeliness. *Pace*, 544 U.S. at 418.  The claims remain untimely.

### iii.   Conclusion

The claims contained in Aviles's petition are untimely and procedurally defaulted without excuse.  Based upon Aviles's response to this Court's order, he

has not demonstrated a valid basis to excuse his late filing or to set aside the procedural default.  Accordingly, this matter will be dismissed with prejudice.

### III.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254 Proceedings.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Aviles has not made a substantial showing that he was deprived of a constitutional right.  He has failed to make a colorable claim of equitable tolling or demonstrate a valid basis to set aside the procedural default.  Accordingly, his is petition is both procedurally defaulted and time barred.  Reasonable jurists would find no basis to encourage further proceedings.  A certificate of appealability will

be denied.

Based on the foregoing, the Court enters the following:

## ORDER

1. The Petition (Doc. 1) is **DISMISSED** with prejudice.

2. The Clerk of Court is directed to enter by separate document a

   judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability is **DENIED**.

   **DATED** this 28th day of February, 2024.


_____
Brian Morris, Chief District Judge
United States District Court

17